## No. 9520.

## ROBERTSON *v.* FIRST NATIONAL BANK OF JACKSON.

PLEDGEE OF COMMERCIAL PAPER—*Duty to Pledgor.*   It is the universal rule that the pledgee of commercial paper is bound to use reasonable diligence in the collection thereof.

*Error to Denver District Court, Hon. John I. Mullins, Judge.*

Mr. N. WALTER DIXON, for plaintiff in error.

Messrs. DANA, BLOUNT & SILVERSTEIN, for defendant in error.

Mr. Justice Scott delivered the opinion of the court:

THE defendant in error brought suit against the plaintiff in error upon a promissory note in the sum of $700.00, dated May 10, 1916.

The complaint sets forth a collateral agreement as attached to the note as follows:

"Having executed a promissory note, dated at Jackson, Tenn., on the 10th day of May, 1916, for $700.00, payable to the First National Bank of Jackson, Tenn., or order, six months after date, with interest from maturity at the rate of six per cent per annum, and being desirous of securing the same, and all my other liabilities actual and contingent, to said bank, or its assigns, now existing or which may

hereafter arise, I do hereby pledge to said bank and its assigns, as collateral security for said note and said other liabilities.

Note and coupons attached of Rachel H. Lyon, due October 28, 1914, and agree to give additional security to keep up the present margin whenever the market value of the above collateral should decline, and within twenty-four hours after receipt of notice so to do from the holder of this note or other of said liabilities. In default of payment of said note, or other of said liabilities, at maturity, or in default of my giving such additional security when so notified, or in case of my suspension, failure or insolvency or the commission of any act of insolvency or bankruptcy on my part, said bank, or its assigns, shall, in addition to the foregoing collateral, have a lien on all notes, drafts, bills receivable or moneys held by or in transit to said bank, or its assigns, in my name or for my account, the same to be deemed to have been assigned to said bank, or its assigns, as additional collateral for the payment of said note and all other of my said liabilities, actual and contingent; said bank, its assigns, or the holder of such liability to have the option of application of any or all of said collaterals before sale, or the proceeds thereof after sale, upon any, either or all of said liabilities as it may elect, and upon such default being made, I do hereby authorize said bank, its officers, assigns, or the holder of said liability, to sell, or cause to be sold, any or all of said collaterals, or any substitutes therefor or additions thereto, at public sale, upon such notice, at such place and on such terms as said bank, its officers, assigns or the holder of said liability may deem proper, or at the option of said bank, its officers, assigns or the holder of said liability, at private sale, without notice to me or the public, and to apply the proceeds first to the payment of the expenses incurred by said sale, next to the discharge of my liabilities as hereinbefore set out. Any surplus left shall be paid to me. If the proceeds of such sale are not sufficient to pay all of my liabilities hereby secured, I agree to pay the balance on demand. In case of a sale of said

collaterals, said bank, its assigns or the holder of any liability hereby secured, may become the purchaser thereof without any right of redemption on my part.

. S. R. Robertson, Sign."

A demurrer was sustained to the original answer and cross-complaint. An amended answer and cross-complaint was filed, and upon motion of the plaintiff was stricken from the files, and judgment rendered for the plaintiff.

Inasmuch as the matter was thus determined on the pleadings, we set forth in full the amended answer and cross-complaint, as follows:

"That the note sued on in this action is the last renewal of a note made by the defendant in the year 1912, payable to the order of G. H. Robertson, who then resided in the City of Jackson, State of Tennessee.

2. That as collateral security for the payment of said original note and any and all renewals thereof, defendant delivered to payee named in said original note a certain promissory note secured by second trust deed on real estate situate in the City and County of Denver, Colorado, which said collateral note came into the possession of the plaintiff with said original note, as collateral, and which plaintiff accepted as pledgee and thereby became and was charged with all the duties of a pledgee in respect thereto.

3. That said collateral note was, at the time of delivery of the same by defendant as aforesaid, a good and collectible note of greater value and amount than the note sued on in this action, said collateral note being for the principal sum of two thousand dollars ($2,000) ; that by the terms of said deed of trust securing the payment of said collateral note, plaintiff could have declared said collateral note due and payable in the month of January, A. D. 1913, for default in payment of interest, and said collateral note fell due by its terms on the 28th day of October, A. D. 1914.

4. Defendant is informed and believes, and so alleges, that said collateral note could have been enforced and collected by the plaintiff by the exercise of reasonable diligence at any time in the year A. D. 1913, after January

in said year, and until the month of March, A. D. 1915, either by foreclosure of said deed of trust or by action at law.

5. That during the year 1913, 1914 and 1915, plaintiff was repeatedly requested and urged by the defendant to enforce the payment of said collateral note, but plaintiff wholly neglected and refused so to do and refused and neglected to present the same for payment when the same became due and refused to deliver said collateral note to defendant in order that he might enforce the payment of same.

6. That during the year 1913 defendant, in order that he might declare said collateral note due and payable and enforce the payment of same, requested plaintiff to deliver to him said collateral note, and tendered other good and sufficient collateral to plaintiff in lieu thereof, and that plaintiff refused to deliver said collateral note or accept the collateral tendered in lieu thereof.

7. That at the time the renewal note sued on in this action was made by defendant, defendant was not advised and had no reason to believe that said collateral note had become worthless; and that when he was so advised, he refused to make further renewal of the note sued on, although requested by plaintiff so to do.

8. That said collateral note, as defendant is informed and believes, has now become non-collectible and of no value to defendant, and that by the neglect and refusal of plaintiff to collect the same when it could have been collected, and by its refusal to permit defendant so to do, defendant has been damaged in the sum of two thousand six hundred and eighty dollars ($2,680)."

It is agreed that the sole question to be determined is, does the amended answer and counterclaim set forth a good defense.

We assume that the collateral agreement was attached to the original as well as the renewal notes.

It will be noted that this agreement authorized the bank, in case of default in payment of defendant's note, to sell

the collateral note and security, which in this case appears to have been a trust deed.

It will be seen from the answer that the collateral note became due under its terms October 28th, 1914, and in fact because of a default in the payment of interest, in January, 1913.

This suit was instituted in June, 1918. It is alleged that the defendant repeatedly urged the plaintiff during the years 1913, 1914 and 1915 to enforce the collection of the collateral note, which request was neglected and refused, and also that defendant tendered to plaintiff other good and sufficient security for his debt, and requested the delivery of the collateral note to him in order that he might enforce payment, and that plaintiff refused to so return the collateral note to the defendant for such purpose.

The general rule of law in respect to the duty and diligence of a pledgee is stated in 31 Cyc. 832 to be as follows:

"In the enforcement of collateral by the pledgee, it is his duty to use ordinary diligence, not only in the making demand for payment or performance on the principal debtor, but also in taking the necessary steps to fix the liability of parties secondarily liable, in making sales when authorized, and in prosecuting suit to judgment and execution; and he is liable to the pledgor for any loss occasioned by his negligence in any of these matters."

That the pledgee of commercial paper is bound to use reasonable diligence in the collection of the same is the universal rule of law.   *Hallack L. & M. Co. v. Gray,* 19 Colo. 158, 34 Pac. 1000; *Waldron v. Marcier,* 82 Ill. 550.

It appears from the collateral contract that the plaintiff was duly authorized to sell the collateral.   Under this state of facts, the plaintiff was clearly guilty of negligence. *Natl. Exchange Bank v. Kilpatric,* 204 Mo. 119, 102 S. W. 199, 120 Am. St. 689, and authorities there cited.

The question of diligence upon the part of a pledgee is largely one of fact to be established on the trial.   *Hall v. Railroad Co.,* 15 Ind. 362.

The primary and indeed the one purpose of a pledge is to

put in the power of a pledgee to reimburse himself for the money advanced when it becomes due and remains due and unpaid. The contract carries with it an implication that the security shall be made effectual to discharge the obligation. *Lamburton v. Window,* 12 Minn. 232, 90 Am. Dec. 301.

In the case of *Bonta v. Curry,* 66 Ky. 678, it was held:

"The assignee of a note as *collateral security* was notified of the impending insolvency of the obligor, and warned, that if he did not sue or surrender the note forthwith, he must take the risk, and would be held responsible: the debt being lost in consequence of the failure to sue when notified and warned as above, the assignee is held responsible for the amount of the note."

It was said in *Hanna v. Holton,* 78 Pa. St. 334, 21 Am. Rep. 20:

"A creditor who holds a collateral security for the protection of his debt stands in a different relation to the assignor of the collateral, though the latter be his debtor. By the assignment a privity in contract is established, which invests the assignee with the ownership of the collateral, for all purposes of dominion over the debt assigned. He alone is empowered to receive the money to be paid upon it, and to control it in order to protect his right under the assignment."

It is argued that defendant is estopped by reason of the execution of the renewal note. This is not pleaded and if it were, must be largely determined by the circumstances appearing.

We think the answer sufficiently states a good defense.

The judgment is reversed.

Garrigues, C. J., and Denison, J. concur.